**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **REGAS, FREZADOS & DALLAS LLP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 C 3420** |
| | ) | |
| **FEDERAL DEPOSIT INSURANCE** | ) | |
| **CORPORATION, as receiver for** | ) | |
| **Mutual Bank,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The law firm of Regas, Frezados & Dallas LLP (Regas) has sued the Federal

Deposit Insurance Corporation (FDIC), in its capacity as receiver for Mutual Bank, to

recover unpaid legal fees and expenses that Mutual Bank allegedly owed to Regas.

Regas currently holds funds in its client trust account that it seeks to retain in partial

satisfaction of this debt. The Court previously denied the FDIC's motion to dismiss the

complaint for lack of subject matter jurisdiction and failure to state a claim. *Regas,*

*Frezados & Dallas LLP v. FDIC*, No. 10 C 3420, 2011 WL 332545 (N.D. Ill. Jan. 28,

2011) (*Regas I*). The Court later granted Regas's motion for summary judgment in part,

regarding the amount allegedly due. *Regas, Frezados & Dallas LLP v. FDIC*, No. 10 C

3420, 2011 WL 4738334 (N.D. Ill. Oct. 10, 2011) (*Regas II*). The Court assumes

familiarity with these decisions.

The parties have filed cross-motions for summary judgment. For the reasons

stated below, the Court grants both motions in part and denies them in part.

**Background**

Regas deposited checks $612,591.16 into its client trust account. Regas obtained the checks pursuant to its representation of Mutual Bank in three separate matters. The legal characterization and effect of the manner in which Regas obtained the checks is a disputed issue in this case. Regas seeks a declaratory judgment that it is entitled to retain this money and deposit it into its private account in partial satisfaction of its $831,134.37 claim against Mutual Bank for unpaid legal bills.

The Court draws much of the following factual description from Regas's Local Rule 56.1 Statement. The Court recognizes that the FDIC disputes the description of several of these facts but concludes that those disputes are not material for purposes of the legal arguments discussed below.

**A.      The disputed funds**

Most of the disputed funds derive from what the parties refer to as the Tejany matter. In late 2008, Mutual Bank retained Regas to collect delinquent loans to several entities controlled by Noor Tejany that were secured by mortgages on various hotels, including one in Oakbrook Terrace, Illinois. Around the time that Mutual Bank engaged Regas on this matter, Tejany arranged to sell to J&S Hospitality both the Oakbrook Terrace hotel real estate and the personal property used to operate it. Regas filed an action in state court to foreclose on the mortgage. Regas then worked out a short sale agreement that was accepted by all involved. J&S agreed to purchase the hotel for an

2

increased price, and Mutual Bank agreed to accept the sale proceeds in satisfaction of its loan, so long as the sale closed by February 20, 2009.

In early 2009, the Illinois Department of Employment Security and the Illinois Department of Revenue asserted what the parties describe as tax claims against Tejany and the entities that owned the hotel.  The claims appeared to require J&S to retain funds from the hotel sale proceeds that could be used to satisfy outstanding debts.  The parties involved in the hotel sale also discovered that various lien claims encumbered some of the property, including a mechanic's lien and a federal revenue lien.  J&S was concerned about its potential liability relating to the tax claims, but it "agreed to proceed with [Regas's proposed] strategy if an escrow was set up with Chicago Title so that some of the sale proceeds would be withheld to cover the Tax Claims until it had been confirmed that no liability would attach to J&S."  Regas's L.R. 56.1 Stmt. ¶ 7.

"Since money was being escrowed for the Tax Claims, [Regas partner William] Dallas obtained direction from [Mutual Bank Board Chairman Pethinaidu] Veluchamy to try to reduce or extinguish the Lien Claims to maximize the amount that Mutual Bank would receive from the sale of the Hotel."  *Id.* ¶ 8.  "To that end, Chicago Title agreed to provide a clear owner's title insurance policy to J&S provided that funds were escrowed for the Lien claims pursuant to a title indemnity escrow agreement."  *Id.*  After the sale closed on February 20, 2009, "Chicago Title held back $620,989.50 of the sale proceeds pursuant to the escrow agreements established by the parties."  *Id.* ¶ 9.  "Under the Escrow Agreements, Chicago Title was not allowed to release any of the

escrowed funds to Mutual Bank unless and until the [lien and tax] Claims were released." *Id.*

After the closing, pursuant to directions from Veluchamy, Regas "obtained releases or reductions of the Tax Claims and the Lien Claims by representing Mutual Bank in lawsuits, preparing agreements, attending meetings, placing phone calls and sending letters and emails to the various claimants, and negotiating with them to reduce or eliminate their Claims." *Id.* ¶ 12.

On March 19 and May 29, 2009, Regas arranged for notices to be served on Chicago Title. In the notices, a Regas attorney wrote:

> This is a Notice of an Attorneys' Lien pursuant to 770 ILCS 5/1. Mutual Bank has retained us as its attorney and placed in our hands for suit or collection, a claim, demand or cause of action against Chicago Title Insurance Company as escrow agent of the above-referenced escrow.
>
> You are hereby further notified that Mutual Bank has agreed to pay Regas, Frezados & Dallas LLP as compensation for the services rendered or to be rendered in connection with this claim a sum of money on an hourly basis and that a lien is claimed upon such claim, demand or cause in action, and the escrowed funds, for our attorney's fees.

Dallas Dec. Ex. 5-6.

In June 2009, Chicago Title issued three checks jointly payable to Regas and Mutual Bank from the lien escrow amounts, totaling $558,341.68. Chicago Title delivered the checks to Regas, which held but did not deposit the checks.

The remainder of the Mutual Bank-related funds in Regas's client trust account come from two sources. First, Ticor Title Insurance Company delivered a check for $17,237.15 to Regas in connection with the firm's representation of Davenport Estates LLC "in connection with a loan transaction." Regas's L.R. 56.1 Stmt. ¶ 17. Second, the

trustee in the Chapter 13 bankruptcy case of Arif Usmani issued several checks during the first half of 2009 in an effort to satisfy the bank's claim against Usmani. After some of these checks went stale, the trustee re-issued them payable to "Mutual Bank c/o Regas Frezados & Dallas."

**B.      Further proceedings**

In May, June, and July 2009, Regas informed Mutual Bank personnel that it was holding the checks from Chicago Title, Ticor Title, and the Usmani bankruptcy "pursuant to our statutory attorney's lien and common law retaining lien." *Id.* ¶ 27. On July 28, 2009, Dallas sent an e-mail to a Mutual Bank employee stating: "To avoid the checks we are holding from becoming stale dated, we would propose depositing the checks into our client funds account. We will not withdraw these funds from our client funds account without Mutual Bank's approval or court order." *Id.* ¶ 29. In response, Mutual Bank authorized Regas to deposit the checks under these terms. Regas deposited three checks totaling $610,870.94 into its client trust account in July and August 2009.

On July 31, 2009, the Illinois Department of Financial and Professional Regulation closed Mutual Bank and appointed the FDIC as receiver. On November 2, 2009, Regas filed a proof of claim for $832,259.62 with the FDIC. Both the proof of claim and the letter Regas sent with it indicated that Regas was asserting a lien over the funds it was holding.

In August and December 2009, Regas sent the FDIC's attorneys notice that it had received two additional checks from the Usmani bankruptcy. Regas stated that it

was asserting a lien over the checks and sought "advice from the FDIC on whether [the firm] could deposit one of these checks in [its] client funds account to prevent it from going stale." *Id.* ¶ 36. An attorney for the FDIC responded and stated that she had "confirmed with the FDIC that these funds should be deposited in your client trust account for safekeeping until such time as a court order [is] entered or an agreement by the parties is made." *Id.*

On June 4, 2010, Regas filed suit in this Court seeking an order affirming its claim of $832,259.62 in its entirety. Regas also seeks permission to retain the $612,591.16 in liened funds in partial satisfaction of its claim pursuant to two liens it has asserted against the money. On July 2, 2010, the FDIC issued an administrative ruling on Regas's proof of claim, granting Regas a receiver's certificate for $831,134.37 and denying the remaining $1,125.25 of the claim.

In *Regas I*, the Court denied the FDIC's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. The Court determined that Regas's allegations "that Chicago Title refused to turn over funds sought by Mutual Bank due to the existence of outstanding liens" and that Regas "came into possession of further sums in connection with its representation of Mutual Bank" were sufficient to state a claim for an enforceable statutory lien. *Regas I*, 2011 WL 332435, at *4. The Court also held that Regas's allegation that Chicago Title "issued the checks to both [Regas and Mutual Bank] because Regas had attorney's liens on the funds" was sufficient to state a claim for a retaining lien. *Id.* at *5.

The Court later granted Regas's motion for summary judgment in part. The Court ruled "that the FDIC's issuance of a receiver's certificate precludes it from asserting that Regas is owed less than $831,134.37." *Regas II*, 2011 WL 4738334, at *4. The Court ruled, however, that Regas was not entitled to a declaratory judgment regarding the validity of its liens because it had not shown the absence of a genuine issue of material fact. The parties have filed cross-motions for summary judgment on this claim.

## Discussion

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may grant summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## A.     Receiver's certificate

Regas's first argument is that the FDIC has already recognized that Regas has a secured claim and cannot now reverse itself. Regas's proof of claim stated that its claim is "secured by Attorney's Lien on funds, documents and other property." Dallas Aff. ¶ 52. Regas argues that the FDIC's notice allowing Regas's proof of claim in part

7

"did not disallow the Firm's claim as secured [or] say that [Regas's] allowed claim is 'unsecured'" and that "the FDIC cites no authority stating that the issuance of a receiver's certificate on a partly secured claim means the entire claim is unsecured or that the secured part of the claim is denied." Pl.'s Reply at 1.

Regas's argument is unavailing. Mutual Bank's letter states that Regas's receivership certificate "represents a formal record of your claim as allowed." Dallas Aff. Ex. 24. The certificate states that Regas "is a creditor of [Mutual Bank] in the amount of" $831,134.37. *Id.* These statements do not suggest in any way that the claim is secured. Regas provides no support for its contention that the FDIC's failure to address a claimant's assertion of a lien renders a claim secured. The FDIC's allowance of Regas's claim did not amount to an admission that Regas had a secured claim.

**B.      Common law retaining lien**

Regas asserts that it has a valid and enforceable retaining lien on all the remaining funds in its possession. "The retaining lien is a common-law lien that attaches to documents or other property that come[s] into the attorney's possession in the course of her professional relationship with the client." *Johnson v. Cherry*, 422 F.3d 540, 554 (7th Cir. 2005). "As its name suggests, the retaining lien permits the attorney to retain the file in her possession until such time as the client has either satisfied her claim for fees and expenses or supplied security adequate to protect the attorney's interest." *Id.*

Regas contends that it holds a valid retaining lien over the funds it received from Chicago Title, Ticor Title, and the Usmani bankruptcy trustee. The FDIC argues that

Regas did not receive the funds in a manner that allows a retaining lien to attach – essentially, that Regas did not receive the money "in the course of [its] professional relationship with [Mutual Bank]," *see id.*, because Regas received the Tejany funds pursuant to its statutory lien notice and received the remaining funds after its representation of Mutual Bank had ceased.

### 1.      Chicago Title funds

The FDIC does not appear to dispute that if Regas's asserted retaining lien is valid, Regas is a secured creditor entitled to higher priority in payment than it will receive pursuant to the receiver's certificate.  The FDIC argues, however, that Regas's receipt of checks from Chicago Title was not an action in the course of Regas's employment or otherwise in its professional character.  According to the FDIC, Chicago Title delivered the funds to Regas because of its notices that it was asserting a statutory attorney's charging lien.  Regas counters that Chicago Title would have delivered the funds to the firm, rather than directly to Mutual Bank, even in the absence of the assertion of the lien.  To resolve this dispute, the Court must first consider whether money received pursuant to a notice of attorney's lien may be subjected to a retaining lien.  If not, the Court must then determine whether a genuine issue of fact exists regarding the capacity in which Regas received the disputed funds.

No case that the parties have cited or that the Court has found directly answers these questions, though many Illinois courts have discussed the nature of the retaining lien.  The lien was first recognized in Illinois in *Sanders v. Seelye*, 128 Ill. 631, 637-38, 21 N.E. 601, 603 (1889) ("[A] retaining lien exists on all papers or documents of the

client placed in the attorney's hands in his professional character, or in the course of his professional employment."). "The lien is defined as the attorney's right to retain possession of property belonging to the client which comes into his hands within the scope of his employment until his charges are paid." *Needham v. Voliva*, 191 Ill. App. 256, 258 (1915) (citation omitted). The lien "is a 'passive' lien that the attorney cannot foreclose upon or otherwise use offensively to wrest payment from his client [but that] can be asserted defensively when the client demands production of her file." *Johnson*, 422 F.3d at 555 (citations omitted). "The retaining lien thus gives the attorney significant leverage in his demand for compensation." *Id.*

The FDIC suggests that a retaining lien cannot be asserted over money. Courts have found, however, however, that "[i]f the relationship of attorney and clients exists, the possessory lien will cover . . . money collected by the attorney." *Jovan v. Starr*, 87 Ill. App. 2d 350, 355, 231 N.E.2d 637, 639 (1967) (quoting *Needham*, 191 Ill. App. at 258). An attorney may assert a retaining lien on property or funds "placed in the attorney's hands in his professional character, or in the course of his professional employment." *Id.*

This does not mean, however, that the scope of a retaining lien is unlimited. Several courts have indicated that attorneys may not assert a retaining lien over papers if "the purpose for which they had possession of these papers was inconsistent with or adverse to their right to assert such a lien." *McCracken v. City of Joliet*, 271 Ill. 270, 278, 111 N.E. 131, 134 (1915). Courts have held that an attorney who receives funds for a "special purpose" – as a trustee, bailee, escrowee, or depository, rather than in the

role of attorney – may not assert an attorney's lien on such funds. *Jovan*, 87 Ill. App. 2d at 355, 231 N.E.2d at 639; *Bour v. Thomas*, 170 Ill. App. 456, 461 (1912). A retaining lien may also yield if the client "establishe[s] a need for access to the documents in her file" or presents "evidence that she lacks the means either to pay [the attorney's] reasonable fees and expenses or to post adequate security." *Johnson*, 422 F.3d at 556.

The Court concludes that the Illinois Supreme Court would not uphold a retaining lien asserted over money the attorney obtained because he asserted a charging lien. An attorney who asserts a charging lien is not acting in his professional capacity as a representative of the client. Rather, the attorney is taking an act on his or her own behalf and against the client's interest; he acts as a creditor rather than an attorney. Indeed, Dallas states in his affidavit that Regas "was clearly adverse to Mutual Bank with respect to the attorney's liens." Dallas Aff. ¶ 13. Regas has not identified any cases allowing the assertion of a retaining lien over property an attorney has obtained from a client by means of an action adverse to the client, as opposed to property that reaches the attorney in the ordinary course of representation. The Court accordingly "decline[s] to adopt a 'substantive innovation' in [Illinois] law . . . absent some authority to suggest that the approval of the Supreme Court of [Illinois] is forthcoming," *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 640 (7th Cir. 2007) (citations omitted), and concludes that property or money that came into an attorney's possession by virtue of his assertion of a charging lien is not an act within the scope of an attorney's professional services for his client.

The only case that Regas cites to contradict this, *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559 (Fla. 1986), does not support Regas's point. In that case, an attorney deposited a portion of a settlement he received on behalf of a client into his client trust account (and later into his personal account). After the client demanded the money, the attorney filed suit and asserted both a charging lien and a retaining lien. The court held the charging lien was invalid because the attorney had neither provided notice to the client nor "pursue[d] the lien in the original action." *Id.* at 561. The court overturned the appellate court's invalidation of the retaining lien on the ground that "trust accounts are not subject to setoffs for past legal services rendered in unrelated cases." *Id.* In Florida, "[u]nlike a charging lien, a retaining lien covers the balance due for all legal work done on behalf of the client regardless of whether the property is related to the matter for which the money is owed to the attorney." *Id.* The case does not indicate that money that the attorney obtained by asserting a statutory lien (valid or not) can be the subject of a retaining lien.

Regas also asserts that the statutory lien notice was not the reason for Chicago Title's issuance of the checks, or at least that an issue of fact remains regarding the capacity in which Regas received the funds. Regas submits the affidavit of Patrice Connolly, a Chicago Title employee. Connolly states that even without Regas's notice of lien, "pursuant to Chicago Title's typical practice in dealing with Mr. Dallas, Chicago Title would have delivered the checks to Mutual Bank to Mr. Dallas [sic] directly, or had someone from his office pick them up, rather than sending them directly to Mutual Bank." Connolly Aff. ¶ 4. She also states that she "never received any instruction from

12

Mutual Bank or Mr. Dallas to deviate from this standard practice with respect to any closings involving Mutual Bank, including the closing of the hotel property referenced above." *Id.* ¶ 5.

Connolly's statements, and Regas's arguments in its summary judgment materials, assert that Regas would have received the checks even without serving notice on Chicago Title. The proposition that the statutory notice was not a but-for cause, however, does not mean that it did not affect the character of the transaction for purposes of the retaining lien analysis. Neither Connolly nor Dallas denies that the statutory notice was a motivating factor, maintaining only that Regas would have received the funds anyway. The recipient of a notice of charging lien has a strong incentive to comply with the attorney's request, because if the recipient "does not respect the lien, then the [recipient] becomes liable for the attorney fees." *Philip Morris*, 198 Ill. 2d at 98, 759 N.E.2d at 913. Based on these factors and the description of the process in Regas's summary judgment materials, the Court concludes that no reasonable fact finder could conclude that Chicago Title sent the funds to Regas – and, as the FDIC points out, made the check out to Regas – for a reason other than Regas's notice of lien. Because Chicago Title delivered the checks pursuant to this notice, no reasonable fact finder could find that Regas received the checks in a manner that allows it to assert a retaining lien.

### 2. Davenport and Usmani Funds

"Before April 1, 2009, Mutual Bank directed the Firm to stop work on and transfer all of the files on which the Firm was working to new counsel – except for the Tejany

Hotel foreclosure and sale." Regas's L.R. 56.1 Stmt. of Add'l Facts ¶ 32. The FDIC argues that after that date, Regas could not have received funds in connection with the Davenport and Usmani matters in a capacity that entitled it to assert a retaining lien.

Ticor Title disbursed the Davenport check on April 23, 2009. The trustee in the Usmani bankruptcy disbursed two checks in March 2009, but the checks went stale before Regas deposited them. The trustee replaced the two stale checks with a single check dated July 30, 2009, and Regas deposited it on August 5, 2009. The trustee also issued five checks to Regas after April 1, 2009, three of which went stale before Regas could deposit them and two of which were reissued.

Regas maintains that it received the funds in its professional capacity because it was still representing Mutual Bank in the Tejany matter and it therefore "had an attorney-client relationship with the Bank when it received the funds." Pl.'s Reply at 16. Regas also argues that it "remained counsel of record for the Bank in the Usmani bankruptcy." *Id.* at 17.

The Court concludes that when Regas received the checks, it was no longer acting in its professional capacity with regard to Davenport or Usmani because Mutual Bank had told it to cease work on all other activities. Regas provides no support for its contention that checks delivered to an attorney after the client has directed the attorney to cease work on the client's matter and transfer the file to another lawyer can constitute "property that come[s] into the attorney's possession in the course of her professional relationship with the client." *See Johnson*, 422 F.3d at 554. If Regas had

been acting in its role as Mutual Bank's advocate, it would have returned the checks and directed the payers to Mutual Bank's current attorney or the FDIC.

"An Illinois client enjoys an absolute right to terminate the services of any attorney retained by the client." *Woods v. Southwest Airlines Co.*, 523 F. Supp. 2d 812, 822 (N.D. Ill. 2007) (citations omitted). Checks for a client that has terminated its attorney cannot be "placed in the attorney's hands in his professional character," *see Sanders*, 128 Ill. at 638, 21 N.E. at 603, because the attorney no longer has the right to handle the matters for his client. As described throughout this decision, the nature of both the statutory and the retaining lien is that they apply to money or property received or collected in the course of a particular action. No case that Regas cites indicates that an attorney-client relationship in one action enables the attorney to assert the liens in other actions. Because Regas no longer had the necessary attorney-client relationship with Mutual Bank with respect to the other parties, it was not entitled to receive funds on Mutual Bank's behalf, rendering its receipt of these funds outside of the scope of its representation.

Regas also argues that Mutual Bank's agreement with Regas that the checks should be deposited in Regas's IOLTA account pending resolution of the competing claims to the funds "moots the FDIC's entire argument" that Regas did not receive the funds in its professional character. The Court disagrees. The parties' communications make clear that Regas received permission to deposit the checks from Mutual Bank and the FDIC only to avoid having the checks become stale while awaiting resolution of the claims. As with the Tejany funds, Regas maintained possession of the checks by

virtue of its liens, and it deposited them in furtherance of this claim. It cites no authority for the proposition that the assertion of the lien can establish its validity with respect to property that has come into the attorney's hands only by virtue of that assertion.

For these reasons, the Court concludes that Regas's claimed retaining lien is invalid.

## C.    Statutory lien

Regas also argues that it is entitled to keep $50,798.97 of the funds in its possession by virtue of an a lien under the Illinois Attorney's Act, 770 ILCS 5/1(1). In relevant part, the statute provides:

> Attorneys at law shall have a lien upon all claims, demands and causes of action, including all claims for unliquidated damages, which may be placed in their hands by their clients for suit or collection, or upon which suit or action has been instituted, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or, in the absence of such agreement, for a reasonable fee, for the services of such suits, claims, demands or causes of action, plus costs and expenses. . . .

> To enforce such lien, such attorneys shall serve notice in writing, which service may be made by registered or certified mail, upon the party against whom their clients may have such suits, claims or causes of action, claiming such lien and stating therein the interest they have in such suits, claims, demands or causes of action. Such lien shall attach to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits, claims, demands or causes of action, from and after the time of service of the notice. On petition filed by such attorneys or their clients any court of competent jurisdiction shall, on not less than 5 days' notice to the adverse party, adjudicate the rights of the parties and enforce the lien.

770 ILCS 5/1.

A statutory attorney's lien, also called a charging lien, "attaches only to the proceeds that the client might recover in pursuit of a claim for which the attorney was engaged to represent the client." *Johnson*, 422 F.3d at 554. Illinois courts have held

that the Act requires both "money or property to be 'recovered,' or secured, from an adversarial party who has refused to turn over what the client claims is due" and that "the recovery must be a result of action taken by the attorney." *Robert S. Pinzur, Ltd. v. The Hartford*, 158 Ill. App. 3d 871, 881–82, 511 N.E.2d 1281, 1288 (1987).

The Court previously determined, on the FDIC's motion to dismiss, that Regas had successfully stated a claim for a valid attorney's lien based on its allegations that "Chicago Title refused to turn over funds sought by Mutual Bank" and that "as a result of Regas's efforts, Chicago Title ultimately paid most of the requested amount to Mutual Bank." *Regas I*, 2011 WL 332545, at *4. The FDIC now argues that the evidence does not support this characterization of Regas's actions. It contends that Regas's asserted statutory lien is "invalid as a matter of law because it does not attach to a fund generated by Regas' work" and that "there was no adversarial party that received proper notice of lien." Def.'s Mem. at 6.

The Court disagrees with the first of these contentions. The FDIC argues that Regas's work in "the foreclosure action was not successful" and Regas's "efforts to negotiate a reduction in the lien . . . were akin to a defense of a claim, rather than affirmative efforts that resulted in a recovery." *Id.* at 10-11. Regas responds that the foreclosure action was "dismissed pursuant to a settlement granting [Mutual] Bank the proceeds of a short sale" and that the funds at issue were therefore "generated by settling the Foreclosure Action and selling the property." Pl.'s Reply at 4-5. Regas points out that the Illinois Supreme Court has clearly stated that an attorney's lien may be asserted over "the proceeds of the litigation or its settlement." *People v. Philip*

*Morris, Inc.*, 198 Ill. 2d 87, 97, 759 N.E.2d 906, 913 (2001); *see also Standidge v. Chicago Rys. Co.*, 254 Ill. 524, 534, 98 N.E. 963, 966 (1912) (holding that the meaning of "recovery" did not only incorporate money obtained pursuant to a formal decree from a tribunal and that the legislature intended "to give attorneys a lien from and after the service of notice on the defendant, which would protect them against any settlements that might thereafter be made.").

As Regas argues, the agreement between Mutual Bank and Tejany regarding the short sale of the hotel property clearly constituted a settlement of the foreclosure litigation. The "Loan Workout Agreement" specifying the details of the arrangement states that upon completion of the purchase, "the borrowers and guarantors for the Oak Brook Terrace Property will receive a full release of any and all obligations owed by the borrowers and guarantors to Mutual Bank." Dallas Supp. Aff. Ex. A at 6. Because Regas's efforts as counsel for Mutual Bank facilitated this arrangement, it generated a recovery for the bank that may be the subject of an attorney's lien.

The FDIC's primary assertion, however, is that an attorney asserting a statutory lien must serve notice upon the adverse party from whom the liened funds are recovered. In this case, the FDIC says, that was Tejany, the party that owed Mutual Bank an unpaid debt and with whom Mutual Bank settled. Regas's dealings with Chicago Title, the FDIC argues, did not generate a recovery for Mutual Bank from an adverse party. Because only Chicago Title received the required notice of lien, the FDIC maintains, the lien is not enforceable.

Regas argues that its actions in securing the release of the liens, which allowed

18

Chicago Title to disburse the funds, generated a recovery from Chicago Title. According to Regas, Mutual Bank's goal was to recover the funds that Chicago Title was holding in escrow after the sale of the hotel property, and Regas's actions in obtaining releases of the other claims on those funds caused Chicago Title to release the money and distribute it to Mutual Bank.  Regas argues that Mutual Bank thereby generated a recovery from Chicago Title to which a charging lien properly could attach.

 Illinois courts have consistently held that because "the attorney's lien is a creature of statute, the Act must be strictly construed, both as to establishing the lien and as to the right of action for its enforcement."  *Philip Morris*, 198 Ill. 2d at 95, 759 N.E.2d at 911.  "Attorneys who do not strictly comply with the Act have no lien rights." *Id.*  For example, service of a notice of lien upon a party's attorney, rather than the party itself, is insufficient.  *Cazalet v. Cazalet*, 322 Ill. App. 105, 107, 54 N.E.2d 61, 63 (1944) ("[The attorney's lien] did not exist at common law but is purely a creature of the statute which must be strictly followed in order to establish the lien and right of action against the defendant for the enforcement thereof.").

The Illinois Supreme Court has stated that

[t]he object of the statute is to require notice of the existence of such claim to the party adverse to the client of the attorney claiming the lien, so that a hardship may not be imposed upon a litigant who makes and completes in good faith a settlement of the matters in litigation by creating a liability against him in favor of his opponent's attorney without notice of the attorney's lien.

*Catherwood v. Morris*, 360 Ill. 473, 479, 196 N.E. 519, 522 (1935).  "Should the defendant or debtor ignore the notice claiming a lien, and settle in full directly with his adversary, there is no specific property left in his hands which could be applied to the

payment of the attorney's fees upon foreclosure or other proceedings to enforce the lien." *Baker v. Baker*, 258 Ill. 418, 421, 101 N.E. 587, 588 (1913). The purpose of the statutory notice requirement is thus both to prevent the recipient of the notice from disposing of the funds without knowledge of the attorney's claim and to inform the recipient of the notice how to direct the liened funds upon disbursement.

The FDIC argues that Chicago Title was not sufficiently adverse to Regas. *See Pinzur*, 158 Ill. App. 3d at 880, 511 N.E.2d at 1288 (noting that a statutory lien attaches to property that is "'recovered,' or secured, from an *adversarial* party who has refused to turn over what the client claims is due") (emphasis added). Regas responds that nothing in the statute indicates that "the client and the third party must have 'adverse litigable claims' against each other." Pl.'s Reply at 7.

In reply, the FDIC emphasizes that the statute requires an attorney to serve a notice of lien "upon the party against whom their clients may have such suits, claims or causes of action." 770 ILCS 5/1. The statute also makes it clear that "the adverse party" is the recipient of the notice. *Id.* The Illinois Supreme Court has confirmed that an attorney asserting a lien must serve notice "upon the party against whom the client has a claim." *Philip Morris, Inc.*, 198 Ill. 2d at 95, 759 N.E.2d at 911. In that same case, the court noted that notice of the lien is served "on the client's adversary" or "the underlying defendant." *Id.* at 98, 759 N.E.2d at 913.

At the time Regas served notice of its lien, however, Chicago Title was adverse to Regas's client: it was holding funds to which Mutual Bank claimed to be entitled. In this regard, Mutual Bank had a "claim" against Chicago Title, as the attorney's lien

statute requires.  As Regas argues, nothing in the statute requires that the client and the third party upon whom notice of the lien is served must have "adverse litigable claims" against each other.  Pl.'s Reply at 7.

In practical terms, the FDIC's contention that the proper recipient of the lien notice was Tejany makes no sense.  At the time Regas served notice of its lien, Tejany had already relinquished the funds at issue via the escrow agreements.  Service of notice on Tejany would have served no practical purpose.  Even if the lien statute requires strict compliance, as the FDIC argues, there is no basis to conclude that it requires empty formalism.

The FDIC also argues briefly that the statutory lien is invalid because the escrow agreements themselves forbade Chicago Title's compliance with the lien notice – the agreements note that the contracting parties "direct [Chicago Title] to disregard any and all notices, warnings or demands given or made by the undersigned (other than by Buyer and Mutual) or by any other person."  Def.'s Resp. at 12.  Regas responds that even if Chicago Title did breach the agreement, the FDIC has cited no case in which a court "invalidated a statutory lien between attorney and client because another party breached its contract with the client."  Pl.'s Reply at 10.  The Court agrees.  The nature of a statutory lien is such that a notice recipient often will be paying an attorney rather than the attorney's client, the party to whom the notice recipient's obligation runs.  The FDIC has not provided any authority indicating that the lien may be rendered invalid in the way it argues.

For these reasons, the Court concludes that Regas's claimed statutory attorney's

lien is valid.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part both the FDIC's motion for summary judgment [docket no. 75] and Regas's motion for summary judgment [docket no. 87]. A joint status report addressing what exactly remains to be determined in this case in light of the Court's rulings is to be filed by the close of business on July 23, 2012. The case is set for a status hearing on July 24, 2012 at 9:30 a.m.

_____
s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: July 16, 2012